And we will begin with Case No. 242167, Life Spine v. Globus Medical. Mr. Glass, whenever you're ready. Good morning, Your Honors. May it please the Court, James Glass, representing Appellant Life Spine, Inc. Your Honors, there's one issue on appeal today, specifically the Board's error in construing the claimed ramped portions that are complementary with each other to be limited to those that complete one another. I'll jump right to the issues. The Board's construction was an error here primarily because it excludes the very embodiment that Claim 10 was intended to cover. The word complementary was added during prosecution, this is at Appendix 1342-44, in response to an objection over the prior art almost imbeddable. Before you get to that, the claim language is actually complementary with. Would you agree with that? It's complementary with each other, correct. With one another. With one, correct. Complementary with implies, I would think, some sort of fitting together and not just looking like each other, favoring, I would say, the construction that the Board had. We don't disagree that it includes that. We certainly don't disagree that it includes angles that, to the extent we understand what complete means, that they mate with one another, or like a puzzle piece. Our construction does not exclude that, but our point is that based on the specification, based on the prosecution history, it must also include the Figure 40 embodiments. Does that answer your question, Your Honor? It does. Do you think it's meaningful that the phrase complementary with does not appear in the specification? Only complementary alone does. I think it's important only in the sense that, again, what the applicants intended to cover, I think, was very clearly stated in the prosecution history. The fact that the word complementary is used in connection with Figure 17, I don't really think informs what it means in the claim. It's very vague how it's used in that context. It could be consistent with the notion that they fit together, that they're puzzle pieces, but it certainly doesn't rise to the level of a definition, lexicography, or disavowal of Figure 40. Going back to the prosecution history, and importantly, when adding the language, when adding those amendments to the claims, the applicant stated that those claim amendments, and this is at Appendix 1347, those claim amendments covered the embodiment illustrated in Figure 40, and more importantly, as described in the associated disclosure. Not only did the applicants, when they added that claim language, instruct us to look to the figure, but also to the associated disclosure. That language is critical. Both Globus and the board below, for the most part, ignored that second part of their statement, focused exclusively on the figure, and unidentified portions of that figure. Looking to the disclosure, the associated disclosure, that's at Column 15, excuse me, Column 13, Lines 25 through 35, the specification uses the exact language as the claims. It states the first and second side portions include a bridge. I'll get to that in a moment. And just like the claims of first ramp portion and a second ramp portion, it identifies those as Elements 306, 308, 310, 312. That's the specification. Looking at the figures, the figures at Elements 306, 308 disclose the ramped portions, and they're disclosed as being mirrored. They're shown as being mirrored, or having the same angle of inclination. There's no dispute on any of this. There's no dispute that the applicants stated during the prosecution that the claim— So, Counsel, just following up on some of the questions posed to you by Judge Stark, there is that singular reference to complementary in the specification. But if you look at, for example, Column 17, I would say in the areas of around Lines 18 through 30, once you've had a chance to look at that, what, if any, relevance do you believe this portion of the specification should have with respect to the claim construction for the disputed limitation? Your Honor, you're referring to the portion that starts in an embodiment, the first ramped portion. Yes. Approximate, the first end. I don't know that that really informs what it means to be complementary. It does give the location of the ramped portions, but I'm not sure I follow. I don't think that that portion necessarily informs what the phrase complementary means. Well, why I at least took you to that, because if you look at the relevant claim language, and what I was asking about was the disputed limitation, right? It says we're in the first ramped portion of the first endplate, and the second ramped portion of the second endplate are complementary with one another. So, I was then taking it to a part of the specification that at least talked about these pertinent ramped portions, and I was just wondering if you believe any of that interplays into how we should understand the term complementary. I think in one sense, and I was about to get to the bridge, I think in one sense it does dictate that it really makes a distinguish between the bridge portion and the ends of the upper and lower surfaces where the ramped portions are located. So, in terms of where these portions are located, I think the specification is consistent with our position that those ramped portions really can't be the bridge. They have to be those ramped portions as described in the specification. Did I answer your question, Your Honor? Yes, you can move on. So, again, getting back to our point, again, there's nothing, there's no dispute on anything that I've raised, the statements in the specification, the statements in the prosecution history, the Board's construction, just to tie that up before I move on to Globus' points, would exclude the very embodiment that the claims were intended to cover, and that's the figure 40 embodiment. Again, our construction embraces both their construction, the dictionary definition, as well as the figure 40 embodiments. Can I just confirm that I understand the distinction between the parties? If there were the ramped portions that we're interested in, of the end plates, that were each at 45-degree angles with respect to the horizontal plane between them, that would meet your construction, because you want to include, they would be mirrored if they're each 45 degrees, but it would also meet their narrower construction, I think, because they would complete each other by definition, I think. I believe, I won't speak for counsel, but I do believe that under their construction, they would exclude, if we're talking about, if I understand your hypothetical, we're talking about something that would look like more or less a greater than symbol. Is that fair? Like a greater than symbol, is that what you're saying? Yes. Yeah, if the two ramped portions of the end plates, which is what the claim directs us to, that's the angle we're concerned about, right? If they were each essentially 45-degree angles, so when you put the thing together, they would snugly fit together, I assume he's going to say that's within the scope of his construction, but it would be within the scope of yours. I'm not entirely sure what counsel will say. I think that's kind of what the examiner said during prosecution, that if you take those upper and lower halves, take them apart, they snug together perfectly. So that's what the examiner said. We agree with that. So I don't know that they will say that's excluded, but it certainly is incorporated into our construction, or intended to be, at least. So I'll move on to Globus' position. Globus' attempts to justify the board's construction below. First, Globus points to elements of Figure 40 that allegedly disclose the ramp portions that physically touch or complete one another. And specifically, Globus points to angled portions that are part of the bridges in 314. These angled portions that they point to are not labeled. They're not described. They circle them. They point to them. The specification never refers to that portion of the bridge. Element 314 is described as a bridge, not a ramp. That's not just semantics. Not only is element 314 described as a bridge, the spec describes it as performing a bridge function, never as a ramp. And this is at, for example, Appendix 165, Column 13, 32 through 34. The board seemed to agree with Globus, I would say as a factual matter, that that's the angle that they were referring to in the prosecution, and that therefore, Figure 40 would all be consistent with their construction. Do I have to review that for substantial evidence? I don't think that's a factual issue, Your Honor, because it falls into what is covered. Remember the statement in the specification was that, excuse me, in the prosecution history, was that the amendments cover the embodiment of Claim 40 and the associated disclosures. So we're still talking claim scope. And the reason that can't be a ramped portion is because it's not a ramp. It's never described as a ramp. It's never performing a ramped function. So the board and Globus focused on only one thing. Is that portion complementary? And that fits, they pointed to that because if you look at it, yes, it fits the construction of mating to one another, completing one another. But it's not a ramp. It's expressly described in Columns 13, 32 through 34 as the first and second side portions each can include a bridge portion that connects the first ramp portion. So far from being a ramp, they connect the bridge portions. So that cannot be the claimed ramped portions. I know we're into your rebuttal, but I would like to know your position on the other prior art references that were before the board. I don't know if they were before the examiner that appeared to use complementary in the narrower way that the board did, rather than the way you prefer. Well, again, we don't, so a lot of those statements I think are vague, but there are statements and there are figures that show angles and ramps that I think are complementary to each other in the way that Globus would say. That is not inconsistent with our position. We are, again, we're not saying that the term excludes angles that mate with one another and complete one another. But based on how this is used in the spec, and I know your honors are familiar with the law, but the spec is the best place to look for a definition of the claim term. And the applicant specifically told us that it must include the figure 40 embodiment. So whether the prior art discloses and uses the term complementary in a way that is consistent with what the board found really isn't the issue. The issue is that here it must include- Are you contending anything in terms of lexicography or disavow just based off of the statements you were saying? Are you contending anything with respect to lexicography or disavow based off of the statements you were just saying in terms of interpreting the term in dispute? Our point is that there's nothing in the spec or the prosecution history that rises to a level of disavow of claim scope. And it's really just looking at the term in light of the prosecution history and the specification. That the applicants and the inventors intended it to be broad enough to cover at least the figure 40 embodiment. So this is not a typical case where we have lexicography and a disavow and defining one term to be another. It's an intent of the inventors in looking at what they said and that this term should be broad enough to include at least that figure 40 embodiment. We're well into your rebuttal now. I'm going to pause and reserve. Unless you have a question, Your Honor, I'll reserve the rest of my time. Thank you. Thank you, Your Honors, and may it please the Court. I want to address one point real quick. The counsel keeps saying that the board's construction excludes the figure 40 embodiment. It doesn't. We included figures in our brief that show the complementary side ramp portions that that claim was, that limitation was specifically added to encompass. You're going to have to show me because I don't see how. The only way you seem to get there is by telling us to look at the bridge angles, which have absolutely nothing to do with what the claim is talking about. Your Honor, I think context really matters. So that limitation was added, and this is the appendix 1347. That limitation was specifically added to distinguish from the mirrored ramp portions of almost. The applicant specifically argued almost does not disclose complementary ramp portions, and then the applicant pointed to the figure 40 embodiment. Figure 40 has mirrored ramp portions, but what distinguishes it from almost is the side ramp portions that fit together. Well, first of all, you don't say that at 1347, right? You just have one sentence asserting almost does not disclose the first end plate, et cetera, et cetera. You don't tell us, I mean, you didn't tell the examiner what part of figure 40 you were looking at, did you? That's true, Your Honor, but again, almost has mirrored ramp portions. So the only way we could have argued that almost doesn't teach complementary ramp portions is if we're excluding those mirrored ramp portions from the scope of the claim. The examiner, I think, continued to reject your claims over almost even after you added this limitation. Isn't that right? That's correct, Your Honor. And our position is that the examiner's application was not and the reason it wasn't reasonable is the examiner pointed to almost as mirrored ramps, and he did not say those mirrored ramps are complementary. He said you can orient the end plates of almost to have complementary ramp portions. And he actually shows, and this is Appendix 1335, where you can see the figures that the examiner reproduced, where he actually shows the end plates disassembled. And he points to the end ramps that are right next to each other. The way the examiner was applying the prior art was he was disassembling almost to make them complementary, consistent with our interpretation. And the reason that's not reasonable is our claim requires a assembled implant. The final limitation of Claim 10 specifically requires that the central ramp moves in one direction, the implant expands, moves in another direction, the implant collapses. The bottom line on the prosecution history is that the examiner very much thought that mirrored angles were within the scope of complementary. Your Honor, that is only if, I would disagree with that respectfully, Your Honor. The examiner believed that hypothetically if you could disassemble an implant and rearrange the components to fit together, that is what the examiner thought complementary meant. And our position is that you can't do that based on the way the claim is written. The claimer... Forgive me for taking you off onto a bit of a tangent. Tell me how, because I think that for me at least this is crucial. How is the Figure 40 embodiment captured within the scope of Claim 10 under the board's construction? That's a good question, Your Honor. And I have an answer to that. Is if you, if I could draw your attention to red brief, page eight, where we've annotated Figure 40 to identify the side ramp portions that are complementary. And one thing I want to note is in the IPR, the other side, now they're claiming that the ramp portion, ramp portion only includes the thing that's called a ramp portion in our figures. That is not the position they took in the IPR. In fact, when the board initially rejected their claim construction, everything under the sun became a ramp portion when they were trying to fit the claim... In the interest of time, counsel, can you just answer Judge Stark's question? And you had us on page eight, so keep going. Yes, Your Honor. Figure 40, we annotated Figure 40 of the 731 patent to show the side ramp portions that are complementary. And we acknowledge, Your Honor, that that's not called a ramp portion in the specification. But that was, the limitation was added to distinguish from the mirrored ramp portions of Olmos. Is this, is this an end plate? They're both end plate. Yes, yes, Your Honor. They're the side ramp portions of the upper and lower end plate. So, so they're the same end plate that has the, the quote-unquote ramp portion. The language of the claim is wherein the first ramped portion of the first end plate and the second ramped portion of the second end plate are complementary with one another. So where is the first end plate in Figure 40 on page eight? Your Honor, I believe it would be, I don't know the number off the top of my head. I think one of them is 16. Yeah, isn't it at, let's just say at the front of the device, the left side of the device is the, the first end plate in the embodiment depicted in Figure 40? I would say it's the top plate. Okay, fine. Well, I mean, we know from Figure 43, the bottom line is we know from Figure 43, which is the same embodiment shown in Figure 40, correct? I believe so, Your Honor. We know that the, the things you're pointing to with your red arrows are not the ramped portions that the claim is talking about. I, I, I guess my, my response, Your Honor, would be where do the claims limit the ramp portions to being at the end of the end plates? They limit them, excuse me, to being the first end plate and the second end plate, which I thought you just acknowledged are not the places that your arrows are pointing. Your Honor, I think there's, I think maybe the confusion is the entire upper plate is an end plate and the entire lower plate is an end plate. There's an upper end plate and a lower end plate. Okay, I don't know if this is on topic, but you had said something about how before the board, there was, on the other side, a recognition that there could be a variety of ramped surfaces that were not the ones given item numbers. In the claim, the claim begins with a first end plate, a lower side, a ramped surface, ramped surface extending from the lower side, et cetera, so that later when there's talk of the ramped surface, does that limit their, limit to one, a particular ramped surface or can, does that just mean whatever ramped surface we have found for the opening clause is the one we're talking about, but there can be a variety of ramped surfaces on these end plates? Correct, Your Honor, and if you, oh, I'm sorry. No, that does seem to me on its face to the right. Where in the IPR proceedings did the other side acknowledge, recognize, affirmatively promote the idea that there can be a number of different ramped surfaces on these end plates? More than two, more than one at each end. Yes, Your Honor, and when the board had initially construed the claim to mean completing one another, in the reply brief, they came up with a new theory where they were trying to map the claims to almost in fine surfaces that they could call ramped portions that are complementary under the board's construction. And so in their reply brief, they were taking a very liberal view of what ramped portion was. They were not taking the position that ramped portion, and we, Your Honor, disagree that ramped portion is limited to the specific thing called a ramped portion in the specification. But they were not taking that position when in the IPR in their reply brief. They started to point to many different things as potentially being ramped portions because they were trying to fit almost into the board's construction. So Mr. Glass, as I recall his argument, I think made a point of saying it's not just figure 40 that this claim language was, that when the claim language was added, provided the written description support, but also column 13, lines 25 to 34 or something, description of it that that language was added to cover. That suggests that the added language had to be referring to the specific items identified in that, in those lines as ramped surfaces. Your Honor, I would disagree with that because if you look back at what, I guess the main question is why was this limitation added? What was the applicant trying to distinguish by adding complementary? The examiner had already pointed to almost. And so when the applicant, and this again is back at appendix, it's a single paragraph and let me find it real quick, Your Honors. It's appendix 1347. If you read the entire paragraph in context where the applicant adds the complementary limitation and says that is not disclosed in almost and then points to figure 40. The only way the applicant could have been arguing that almost does not teach complementary ramp portions is if the mirrored ramps of almost are not included within complementary. And that's consistent with the ordinary meaning of complementary. Oh, go ahead, Your Honor. Go ahead. Counsel, in terms of red brief eight, so just kind of wrap it up on that. For figure 40, are the two red arrows that are on page eight of the red brief pointing to the bridge portion? The specification calls them a bridge portion, but they clearly have ramps on them. And we're not aware of any proposal by them that ramp portion has some specific definition. I mean, I agree that the specification... But the call-outs 306, 308, 310, and 312 in the specification disclose the first and second ramped portions? Correct, Your Honor. They are. Okay. And then in terms of the specification and the use of the complementary term, you agree that there's just that one singular use that we discussed with opposing counsel in the specification in the context of complementary texturing or engagement features, correct? Correct, Your Honor. What, if any, relevance do you think that single use of complementary in that context in column eight would be to understand the meaning of complementary with in the disputed limitation of the claim at issue? Yes, Your Honor. To answer your question, that's the whole shebang right there, right? What does complementary mean? The only evidence we have in the intrinsic record in the specification is the usage, that loan usage in the specification. And that is referring to textures that fit together. And that's consistent with the board's claim construction. What about the fact that this part of the specification is pointing to figure 17 as opposed to other parts of the specification that we talked about that were pointing to figure 40? Does that potentially give you some pause about relying on this portion of the specification to understand what complementary means in the actual claim language? No, Your Honor. Actually, I believe it supports our position. Because if you look at what complementary is describing in that usage, it's talking about two things that fit together. But let me look at that the other way, though. Why did they go on to add all that verbiage about things fitting together and textured and, you know, whatever, how they add to one another, if that was all inherent already in the use of the word complementary? Well, I think they're just giving examples of different ways that you can accomplish that, right? You could do it via texturing. You could do it via engagement features. I mean, I think it's just an applicant adding additional disclosure. You would say it's just redundant of the word complementary? I wouldn't, I mean, redundant in a sense. But I wouldn't say it's redundant because it's an applicant adding specific embody or iterations of what that could look like, right? I'm sorry. Can I take you back to the prosecution history 347? Literally what the applicant said was almost in contrast, does not disclose a first end plate having a first side portion, et cetera, and a second end plate having a second side portion. So again, they're not just saying as broadly what almost doesn't disclose as you need them to say. They're specifically pointing us to the ramped portions that are not the ones that you're now telling us in your red brief are important. I, I, maybe I'm not following you properly. When, when they, when they say almost does not disclose a first end plate having a first side portion with the first ramp portion and a second end plate with a second side portion that are complementary, right? Yes, Your Honor. Aren't they indisputably talking about something up here in the front of the figure you recreated in your brief and not the things that you point to at the bridge that you admit the calls the bridge and not the end plate ramped portions? I think that's right, Your Honor. And I mean, I, unless I'm misunderstanding you, I think that supports our position because that was the distinction between figure 40 and the almost reference. Figure 40 has the side, you can call them bridges, that's fine. We, I mean, they, in our view, they clearly qualify as ramp portions. The side portions that fit together where almost has mirrored ramps, so does figure 40. So I just, I don't see how a distinction could have been made if anything else was being referenced. Two just very quick questions. The 45, 45 degree embodiment, do you agree that as I try to understand what's in dispute here, those would be mirrored if they're in the right place as the claims requires and they would also fit together. So therefore, they would be within the scope of both of your constructions. I, I, I'm having trouble visualizing what you mean by fit together means they have to come together to some degree.  I don't know if they're. If they're 45 and 45, can we just agree that that means they're going to touch each other when, when you put them together? Just accept that as a premise. I think at 45 and I'm just, I'm struggling to visualize it in my head. Well, what do, what do you mean then when one completes the other? I thought they, they come together, they, they, they fit together, right? Come together, they touch one another. Right in the, in the, I think that's fair to say. The, the example in, in, in the. Including touching one another at a single point to form an angle. I, I don't know if, again, I'm, I'm struggling to visualize that. That's, I don't think that's consistent with what the figure 40 embodiment shows or even the figure 50 embodiment also has an example of side ramps. But, but following up on my colleague's good questions, what does complete each other really mean? You said they need to fit together. How much in terms of touching needs to happen? Is there, do we need a construction of the construction is what I'm asking. Your Honor, I would say no. For the purposes of this appeal, really the central issue is whether or not complementary, the plain ordinary meaning of complementary can include mirror ramp portions, right? I mean, in an almost and in Chung, those ramp portions cannot fit together in any way because they're separated by a central wedge or distal wedge, right? So if the court answers that in the affirmative, that complementary doesn't include mirror ramp portions, then the board's decision should be affirmed. I mean, it's that simple because the prior can't invalidate the claims. Your Honor, I was wondering if I could have just one more minute to make one final point. Thank you, Your Honors. If you look at all of the evidence presented, there is not a single piece of evidence other than the examiner's unilateral application of the claims to the prior art that support complementary, including mirrored ramped surfaces. There's just not. Again, the specification doesn't use... I don't think you've added anything to what you've just gone over. So I think we'll call it. Thank you, Your Honor. Housekeeping, the pages of the briefing below that you referenced, are they in our appendix? They should be in the appendix, Your Honor. We referenced it in the background section. It's the reply brief of them? Yes, sir. Yes, Your Honor. Thank you. Thank you. Thank you, Your Honors. I just have a few very brief points. Globus's position on whether the Claim 10 maps to Figure 40 rests entirely on whether the portions that they pointed to can be ramped portions. I'd just like to point out, remember what this device is. This is something that sits between two vertebrae of your spine. Critically, they cannot slip. Their own experts said this is at 2057 through 2058 in the appendix, that one of the points of the invention is to decrease lateral slippage. If that part of the invention was acting as a ramp, you would have lateral slippage, which would be devastating to the patient and would be contrary to the invention. It's their own experts' statement. What, in your view, is the role of these ramped portions? It's actually specified very— Just explain it. It's converting lateral motion into horizontal motion. You have a driving ramp, looks like a greater than symbol, and you have the ramped portion that also look like greater than symbols. It drives in laterally and pushes them apart. It drives in horizontally. Excuse me. And the mirror arrangement would have the effect of having the upper portion rise together rather than like this. Exactly. And this is described specifically, column 16, lines 2 through 7. I think I got that right. It describes how the ramped portion, the driving ramp, pushes against the first ramp. This ramp portion is 306, 308. And in this manner, the driving ramp also acts to push the end plates, 14, 16, outwardly into the expanded position. I'd also like to just address this notion in the prosecution history that the examiner's only position was that you have to take these things apart and mash them together. That's incorrect. What the examiner stated, this is at 1333. The examiner stated, excuse me, it's at 1335, that almost disclosed the ramped portions because they have the same angle of inclination. Then he went on to say, but to further prosecution, you can also take these apart. So he essentially has the exact same view that we have, that this angle, he probably used better words, frankly, the same angle of inclination or mirrored angles would be covered as well as pieces that fit together. Do you have a response to the argument that in your reply brief below, you took an inconsistently expansive view of ramped portions? We did. Below, we were dealt the hand that we had and we had to look in the specification, excuse me, in the prior art for aspects that matched a claim construction we didn't agree with. So yes, we pointed to different portions that were ramped that fit together, but they fit the examiner's, excuse me, they fit the judge's construction, which we opposed and we said was incorrect. I have nothing further, Your Honors. Thank you. Thanks to both counsel.